STROTHER, Respondent, v. McMULLEN LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, February 21, 1905.

1. **SALES: Pleading: Counterclaim.** In an action on a contract for balance due for lumber sold by plaintiff to defendant, the defense that there was a previous shortage in delivery of other lumber bought under the same contract, was not permissible unless pleaded by way of recoupment or counterclaim.

2. ———: **Settlement.** Where the quantity of lumber delivered under a contract was ascertained by two inspectors, one furnished by the purchaser and one by the seller, in the absence of fraud or collusion between the seller and the inspectors, the purchaser could not properly claim a shortage in the quantity delivered when sued for a balance due.

3. **PRACTICE: Abandoned Issue.** A defendant can not properly assign as error in the appellate court the action of the trial court in overruling a motion to strike out part of plaintiff's replication filed to an answer which the defendant abandoned before the trial.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Geo. H. Peaks, Faris & Oliver* and *Jones, Jones & Hocker* for appellant.

(1)  The court erred in giving, of its own motion, instruction numbered one.  This instruction is identical with instruction numbered 4, offered by defendant and refused by the court in the form offered.  The court, against objections of the defendant, added to said instruction numbered 4, the words "as full payment" after the word "accepted" and gave the instruction as modified.  Robinson v. Railroad, 84 Mich. 658; Perkins v. Headley, 49 Mo. App. 556; Grumley v. Webb, 48 Mo. 562; Coal Co. v. St. Louis, 145 Mo. 651, 47 S. W. 563; 1 Cyc. 333, and note.  (2)  Instruction number 3, given for the plaintiff is erroneous because it peremptorily instructs the jury to find for the plaintiff in the sum of $440.36, in the very teeth of the fact, that the matter about which they were instructed was in issue under the pleadings.  So the jury should have been left free to pass upon this question of fact, and to either believe or disbelieve, the plaintiff's evidence as it saw fit; this instruction changes the burden of proof by requiring them to find for the plaintiff unless they find that the affirmative defense of payments has been proven.  It is erroneous, because it ignores the legal effect of the acceptance of the check, after the dispute and controversy as to the amount due Strother. The acceptance of this check under the facts and circumstances shown constituted accord and satisfaction. Grumley v. Webb, 48 Mo. 562; Dry Goods Co. v. Goss, 65 Mo. App. 55; Dalrymple v. Craig, 70 Mo. App. 149.

*C. G. Shepard* and *Brewer & Collins* for respondent.

(1) The question of the rescission of the contract was only raised in the pleadings by replication to the defendant's answer, which answer the defendant abandoned by obtaining permission of the court to withdraw said answer and afterwards filing the answer of November 24, 1903, on which the defendant went to trial. Young v. Woolfolk, 33 Mo. 110; Ticknor v. Voorhies, 46 Mo. 110; St. Louis v. Gleason, 15 Mo. App. 25; Rand v. Grubb, 26 Mo. App. 591; Castleman v. Castleman, — Mo. —, 83 S. W. 757; Hawkins v. Massie, 62 Mo. 552; Scovill v. Glasner, 79 Mo. 449; Hill v. Moris, 21 Mo. App. 256; Herley v. Railway, 57 Mo. App. 675. (2) The testimony of Strother shows the check referred to in said instruction was given for hauling and loading lumber on barge, and not for hauling lumber to Holland, for which hauling to Holland, only, plaintiff sues, and the testimony of the witness, Cronan, does not show accord and satisfaction, for it nowhere appears from the testimony that the defendant tendered plaintiff said check upon condition that plaintiff accept the same in full satisfaction. The mere fact that the check recites balance due on lumber delivery accounts does not show that plaintiff accepted same as full satisfaction of account sued on. This being the case, this check was a mere receipt and, therefore, open to explanation by parol testimony. It was, therefore, a question for the jury. Griffith v. Creihton, 61 Mo. App. 1; Dry Goods Co. v. Goss, 65 Mo. App. 55; Cole Co. v. Dallmeyer, 101 Mo. —.

GOODE, J.—The plaintiff is in the sawmill business in Pemiscot county and the defendant is an incorporated company engaged in buying and selling lumber in various localities, with its chief business office in Chicago. The defendant was incorporated in 1901;

but prior to that time had been doing business as a partnership under the same name. Strother sold lumber to the partnership during the two years it was in existence and afterwards sold to the corporation. These transactions extended over four or five years; perhaps longer. The defendant corporation claims to hold by assignment from the partnership, all the rights of said partnership under the contracts between it and Strother. The materiality of this statement will appear. There were contracts between the defendant corporation and Strother by which the former was to buy from Strother all the lumber cut at one of his mills at stipulated prices. Strother was to deliver the lumber free on board cars, and another term of the contract was that the defendant might retain from the contract price of each delivery of lumber, eighty cents per one thousand feet to pay for hauling and loading the lumber on the cars if Strother should fail to load it. If Strother loaded the lumber himself, this money was then to be paid to him. As a rule, payment for deliveries of lumber were made every fifteen days, but occasionally the interval between the payments was over a month. The present action is based on the last of the four contracts between Strother and the lumber company, entered into January 25, 1902. A great deal of lumber was purchased by the defendant under that contract and paid for. The purpose of this action is to recover two items. One of the items amounts to $747.67, which sum is alleged to be due the plaintiff as the aggregate of sums withheld from the purchase price of 934,593 feet of lumber sold and delivered by the plaintiff to the defendant during July, August and September, 1902. It is stated in the petition that the defendant withheld eighty cents per one thousand feet from the price of said quantity of lumber, or the total sum of money above mentioned, to reimburse the defendant for hauling and loading the lumber on cars; that in truth Strother loaded all the lumber himself

and thereupon became entitled to be paid said balance of the purchase price, but the defendant refused to pay it. The other item is for the cost of 30,369 feet of ash lumber sold and delivered to the defendant during August and September, 1902, and amounting, at the prices stipulated in the contract for different grades of ash lumber, to $495.05. Of the first item of $747.67 (the balance of the purchase price alleged to have been withheld to cover the possible expense of loading lumber), the defendant conceded the sum of $307.27 to be due the plaintiff and liability for that amount was confessed at the trial. The defendant denied it owed the balance of said $747.67; so as to that item there was in issue the sum of $440.40. It is necessary to state the grounds of the defendant's contention that it owed part of the item but not the balance. The part it admitted owing ($307.27) was withheld from the amount of the invoices of lumber delivered after August 18, 1902; whereas, the sum it denied owing ($440.40) is alleged by the plaintiff to have been withheld from the amount of invoices delivered prior to August 18, 1902. Now it is the contention of the defendant that a dispute arose between it and Strother, prior to the date just named, as to how much money was owing Strother on account of sums retained by the defendant from the purchase price of lumber plaintiff had delivered up to that date; that to settle this dispute Strother went to Cairo, Illinois, where defendant's superintendent Cronan was, and he and Cronan then and there adjusted and compromised that dispute by an agreement that the actual amount owing on said account at that date was $67.50; which sum the defendant then paid to plaintiff in full settlement and discharge of the disputed matter. Strother, on the contrary, contends that the dispute which was settled August 18, 1902, related only to one load of lumber shipped by barge and had nothing to do with reservations from the purchase price of prior deliveries of lumber which was loaded

on cars. Practically the only issue in the case to be tried and decided by the jury was what the settlement of August 18 covered. This will become obvious from a statement of the controversy in regard to the item claimed by the plaintiff for ash lumber delivered in August and September. The defendant did not deny that plaintiff had sold and delivered to it, as alleged, 30,369 feet of ash lumber in August and September, 1902, or that the aggregate price of it was, as claimed, $495.05. The defense sought to be interposed against a recovery of that item was that during the transactions under the various contracts between the plaintiff and the McMullen Lumber Company prior to those months, the lumber company had bought a great deal more ash lumber from the plaintiff than plaintiff had delivered to it, and was entitled to be relieved from paying for the 30,000 feet delivered in July, and August, 1902, because previously, a shortage greater than that quantity had occurred in the transactions with the plaintiff. This shortage was attempted to be traced, not only under the contracts with the plaintiff and the incorporated company, but under the contracts between the plaintiff and the partnership, on the theory that the partnership had assigned to the corporation all the rights it had under contracts with the plaintiff. This attempted defense was inadmissible for two reasons: It could have been set up only by an answer pleading the shortage by way of recoupment or counterclaim. But the answer on which the defendant went to trial contained nothing but a general denial and a plea that the defendant had fully paid plaintiff for all lumber bought of him and all sums due the plaintiff for hauling and loading lumber. Under this answer plaintiff had no notice that the defendant would endeavor to recoup for a shortage in deliveries of lumber extending over years, and evidence to establish such a defense was inadmissible. Moreover, the uncontradicted testimony showed that in the

course of all the dealings between these parties the quantity of lumber delivered was ascertained by an inspector furnished by the defendant, co-operating with one furnished by the plaintiff, and that settlements were made, generally every fifteen days, and always within a month, according to the report of the inspectors. In the absence of some showing of fraudulent collusion between the plaintiff and the inspectors which resulted in swindling the defendant, the settlements for prior deliveries of ash lumber closed those several transactions and a shortage in the quantity delivered could be no defense to this action. Plaintiff was entitled to a peremptory instruction to the jury to find in his favor for the ash lumber delivered to the defendant during the months of July and August, 1902, and the court rightly gave such an instruction.

Plaintiff was, of course, entitled to recover the $307.27, which the defendant admitted to be due him for money withheld from the price of lumber delivered after August 18, 1902, to cover the cost of loading said lumber on cars. It, therefore, appears that, as stated, the only issue to be decided was whether the settlement of August 18, 1902, was intended to cover the sums withheld by the defendant from the price of lumber delivered up to that date for shipment on cars, or was, as plaintiff said, an adjustment of a dispute about a single barge shipment. It should be stated that occasionally lumber was shipped by barge, instead of railroad, to points designated by the defendant. On that issue the court instructed the jury that they should find for the plaintiff in the sum of $440.36, for hauling and loading lumber on cars from July 7, to August 18, 1902, unless they found the defendant had paid plaintiff therefor, and that in said connection the check offered in evidence was a mere receipt and not conclusive that the defendant had paid the plaintiff for hauling and loading said lumber between those dates. To save figuring the quantity of lumber delivered by

August 18, the parties filed a written stipulation at the trial that it was 530,495 feet, and at eighty cents a thousand feet there must have been withheld by defendant from the price of that lumber the sum of $440.39, or three cents more than the court instructed the jury to find in case they found plaintiff had not been settled with previously on said demand. For the defendant the court instructed that if the jury found from the evidence there was a dispute over the amount due the plaintiff at the time he took the check shown in evidence, and purporting on its face to be payment in full for lumber delivered to August 18, 1902, and plaintiff thereafter accepted it as payment in full and collected said check, that said check was payment in full for all money for hauling and loading lumber up to said date and the verdict for any sums for lumber sold prior to that date must be for the defendant. There is a discrepancy between this instruction as it is contained in the transcript of the record and the defendant's statement about it in the brief. The record shows the instruction was given in the form the defendant requested. It submitted the essential question on the particular matter in dispute, namely: whether or not plaintiff took the check in payment of what was owing him on account of money withheld by defendant prior to August 18, to cover cost of loading lumber on cars.

Exceptions were saved to certain rulings on the evidence; chiefly excluding attempts of the defendant to prove a shortage in the quantity of ash lumber delivered prior to 1902. We hold evidence of that kind was incompetent as the shortage was, under the pleadings, no defense.

Complaint is made of remarks by plaintiff's attorney in addressing the jury. We find nothing in the record about this assignment of error.

The trial court is said to have erred in overruling a motion to strike out part of plaintiff's replication.

The replication was filed as a reply to a long answer which the defendant filed, in which it was pleaded in defense of plaintiff's action, that the defendant had been compelled to haul and load lumber on cars which plaintiff by his contract should have hauled and loaded; that defendant had paid out for such work $1,936.91 and judgment was prayed against plaintiff, by way of counterclaim, for $1,216.61, the difference between the amount due plaintiff on the contract and what defendant had paid because of plaintiff's failure to perform the contract. This answer was replied to and the defendant filed a motion to strike out part of the replication, which was overruled. Thereupon the defendant abandoned not only the first answer, but any defense based on the plaintiff's failure to perform his contract, and filed an answer consisting of a general denial and a plea of full payment to plaintiff of the sums claimed in the petition. In the light of the evidence it is plain that the averments of the original answer had no foundation in the facts. Of course, after the defendant abandoned the first answer and the defense pleaded therein, the ruling on the motion to strike out the reply to that answer became immaterial.

Most of the points raised on this appeal are frivolous. We have found no reversible error in the record. The judgment is according to the weight of the evidence and is affirmed.

All concur.