TURNER, Appellant, v. ST. LOUIS & HANNIBAL
RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, December 15, 1908.

1. **RAILROADS: Crossing: Negligence: Frightening Animals.**
Where the employees of a railroad company in charge of a
train fail to give the statutory signals when approaching a cross-
ing, the company is liable for injuries to a person who attempts
to approach the crossing and is injured on account of the fright
of his horse where such fright and injury were the result of the
failure to give such signal, although there is no actual colli-
sion.

2. ———: ———: ———: **Burden of Proof.** In an action for
injuries incurred at a railroad crossing because of the failure
of the employees of the railroad company in charge of the train
to give the statutory signals, the burden of proof was upon the
plaintiff to show that the signals were not given. The burden
would then shift to the defendant on a plea of contributory neg-
ligence, to prove that the negligence of the plaintiff and not the
omission of the defendant's duty caused the injury. This is the
rule in case of actual collision, but whether the rule would ob-
tain in a case of frightening an animal without actual collision
is not determined.

3. ———: ———: ———: **Prima-Facie Case.** In such case
where the answer of the defendant admitted that the plaintiff's
horse was frightened by the train, the plaintiff made out a
prima-facie case by showing the failure of the defendant to give
the warning signals; the burden was then on the defendant to
establish the contributory negligence of the plaintiff in order
to escape liability.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,*
Judge.

REVERSED AND REMANDED.

*I. C. Dempsey* and *Tapley & Fitzgerrell* for appel-
lant.

Appellant's instructions numbers seven and eight
should have been given. Under section 1102, Revised
Statutes 1899, actual collision is not necessary to create

liability as under section 1105 of said statute. The statutory signal not being given, appellant was induced to approach the crossing and was injured by his horse taking fright at the train, respondent became liable. Norton v. Railroad, 113 Mass. 366; Prescott v. Railroad, 113 Mass. 370; Shaw v. Railroad, 8 Gray 45; Pollock v. Railroad, 124 Mass. 158; Railroad v. Barnett, 59 Pa. St. 259; Railroad v. Stinger, 78 Pa. St. 218; Hudson v. Railroad, 14 Bush 303; Hart v. Railroad, 7 N. W. 9; Lawrence v. Railroad, 87 Iowa 755; Voak v. Railroad, 75 N. Y. 320; Bell v. Railroad, 72 Mo. 50; Melton v. Railroad, 99 Mo. App. 282; Golden v. Railroad, 84 Mo. App. 59; Oates v. Railroad, 168 Mo. 585.

GOODE, J.—Action for damages for a personal injury. The accident occurred May 4, 1906, in the city of Bowling Green. Plaintiff, who had resided in said city for about two years, was driving along Centennial avenue, an east and west thoroughfare, intersected by defendant's railway running from northwest to southeast. The hour was 1:30 p.m. Plaintiff was in an uncovered buggy drawn by a single horse. He testified he pulled the horse almost to a stop when he reached the intersection of Centennial avenue and the north and south street nearest the railway crossing, which street was some two hundred feet or more from the latter point. He said he looked and listened for an approaching train, but could neither see nor hear one; that he then moved forward from the crossing of the two streets in a walk, continuing to listen for a train; his view was obstructed by houses and trees along the north side of the street; he was driving toward the east and as he drew near the crossing a mixed freight and passenger train came along from the northwest going toward the southeast; the bell was not rung nor the whistle sounded and he heard nothing of the train until it was almost on him; it was emitting steam and the steam or the

train itself, or both, frightened his horse, causing it to wheel around and throw him out of the buggy, thereby seriously injuring him. The petition alleges that when plaintiff was within fifteen feet of the crossing a locomotive engine hauling a train, suddenly passed over the crossing, and in so passing frightened his horse, which became unmanageable, turned suddenly and threw him out of the buggy. The acts of negligence alleged are omitting to ring the bell continuously from a point eighty rods from the crossing, until the locomotive had passed, and to sound a whistle continuously over the same distance, and disregard of an ordinance of the municipality, prohibiting trains and locomotives from running through the city at a higher speed than five miles an hour. It is averred that because of the failure of defendant's servants to ring the bell or sound the whistle of the engine, and because plaintiff was relying on such warnings being given if a train approached, he drove nearer the crossing than he otherwise would, and by reason of the fright of his horse, occasioned by the acts of negligence of defendant's servants aforesaid, lost control of the horse; that the servants in charge of the engine saw the horse was frightened and about to run away, yet they carelessly permitted steam to escape from the engine, thereby increasing the fright of the horse; that these acts of negligence were the direct and proximate cause of the accident which caused the injuries aforesaid. The answer admits various statements of the petition; among others that plaintiff drove so close to the railway crossing (carelessly, it is averred) that the passing train frightened the horse, and whatever injuries plaintiff sustained by reason of the horse becoming frightened and overturning the vehicle, were due to his own carelessness. The answer then charges plaintiff with negligence in approaching near the train without looking out for it, when he had ample opportunity to observe it before he drove in proximity to the

crossing and the moving train; that he was well acquainted with the surroundings and if he had exercised ordinary care, and kept a reasonable distance from the crossing, the accident would not have occurred; that the accident was caused and contributed to by plaintiff's own carelessness in the respects stated. Those allegations of the petition not expressly admitted were denied. A replication was filed which amounted to a general denial of the charge of contributory negligence preferred in the answer, a verdict was returned for defendant, and this appeal was taken by plaintiff, who assigns for errors certain rulings on the instructions and the refusal to permit him to introduce in evidence the municipal ordinance regulating the speed of trains. As to the ordinance it may be said that though the petition pleads it, it does not count on the excessive speed of the train as the cause of the accident, and, indeed, there is no evidence tending to prove it was a cause. The proof goes to show the horse took fright at the proximity and appearance of the train as it passed over the crossing with steam escaping. Moreover, the ordinance, if relevant at all, was part of plaintiff's case in chief, but was offered in rebuttal, though it had no tendency to rebut any fact the defendant had proved. Its rejection was not erroneous.

We know of no Missouri decision holding a railway company responsible in damages for omitting to give the crossing signals when an accident occurs in consequence of the omission, but the injury is not due to a collision with the train. It has been said by the Supreme Court the statute providing for the signals, was enacted for the benefit of persons at railway crossings or approaching them. [Bell v. Railroad, 72 Mo. 50, 58.] This question came before the Supreme Judicial Court of Massachusetts on facts quite similar to those before us, in the case of Morton v. Railroad, 113 Mass. 366, wherein it appeared the plaintiff, because of the

neglect of the railroad company's servants to sound a signal at a highway crossing and have a flagman there to warn persons of the approach of the train, drove nearer the crossing than he otherwise would, in consequence of which his horse took fright and threw him out of the vehicle, inflicting injuries. It was contended in said cause the statute of Massachusetts requiring a bell or whistle of a locomotive to be rung or sounded, was intended only to protect passengers at highway crossings from actual collisions; or, at most, from taking positions where there was imminent danger of a collision with a train; and not to protect them from the danger of horses taking fright at the noise of trains when such noises were those usually incident to the movement of trains or the escape of steam. It is conceded in the opinion that many country roads run parallel to railways and near them, where travellers in vehicles are in peril from the fright of horses when trains passed, and that the law made no provision against this danger. Nevertheless it was held the statute calling for warning signals at highway crossings, laid the company liable for damages resulting from the fright of a horse driven too near the track in consequence of a signal not being sounded. The opinion says the same conclusion had been reached by the courts of other States in construing similar statutes, and cited on the point Wakefield v. Railroad, 37 Vt. 330; Hill v. Railroad, 55 Maine 438; and Wilson v. Railroad, 16 Barb. 167. This proposition is not contested in the present case, and though some difficulties will attend its use as the proper construction of the statute, the authorities cited are too strong to be ignored. Our statute says the bell on the engine shall be rung at a distance of eighty rods from where the railroad crosses a public highway, road or street, and shall be kept ringing until the engine has crossed the road or street; or a

134 App—26

steam whistle shall be attached to the engine and sounded at intervals over the distance of eighty rods from the crossing, and until the train has passed, except in cities; further, that the corporation shall be liable for all damages sustained by persons when a bell or whistle is not rung or sounded as required by this section. The section provides the corporation, if sued, shall not be precluded "from showing that the failure to ring such bell or sound such whistle was not the cause of such injury." [1 Mo. Ann. Stat., sec. 1102.] In cities the engine bell must be rung continuously from a point eighty rods distant from a crossing. [Kennayde v. Railroad, 45 Mo. 255, 261; Coffin v. Railroad, 22 Mo. App. 601, 604.] The evidence was conflicting as to whether this was done or not, and, therefore an issue was made about it for the jury, and on this issue plaintiff held the burden of proof. It was also the province of the jury to determine whether or not plaintiff was guilty of negligence in approaching too near the crossing, and whether such negligence contributed to cause the accident. On this issue the burden was on defendant. It has been the law in this State for many years that a railway company may set up contributory negligence in defense of a recovery for its violation of the statute, although a remark in the Kennayde case, supra, might be taken as an intimation to the contrary. [Zimmerman v. Railroad, 71 Mo. 476, 486.] The statute says, in words we have quoted supra, that nothing contained in it shall preclude the corporation from showing failure to give the signals was not the cause of an injury. It has been held this proviso "shifts the burden of proof to the corporation as to the cause of the injury, when it appears the statutory signals are not given" (Crumpley v. Railroad, 111 Mo. 152), and that when a plaintiff proves they were not given, he has made a prima-facie case (Coffin v. Railroad, 22 Mo. App. 601. 604). It is not clear at first sight how the statute

Turner v. Railroad.

alters the general doctrine of the law, which requires a railroad company, or any defendant relying on contributory negligence as a defense, to prove by the weight of evidence, it occurred; that is, carry the burden of proof as to said defense. As construed by the Supreme Court and the Kansas City Court of Appeals in the cases supra, the statute requires the suing party, in order to make a prima-facie case, merely to prove the bell was not rung or the whistle sounded; and instead of requiring him to prove this omission of duty was the proximate cause of the injury, compels the defendant to prove it was not, if it would escape liability. Generally speaking, it is not sufficient for a plaintiff to introduce evidence that a defendant was guilty of the negligence charged, but he must go further and put in proof that the negligence caused the damage. The construction put on the statute is easy of application where there is a collision, which is probably the only sort of accident the Legislature had in mind. In case of a collision, if it is shown the signals were not given, this fairly may be taken as proof prima facie that omitting the signals caused the injury; whereupon the burden ought to shift and the company be called on to establish another cause. But if the accident was due to a horse taking fright as a train drew near without signalling, peradventure he would have been driven as close to the train if there had been a signal, and, according to the general rule in negligence cases, there ought to be proof at least of the additional fact that he would not have been, unless the statutes dispense with proof of it, which we need not decide. In the present case the answer explicitly admits the horse was frightened by the train, and plaintiff swore he would not have approached so close if he had heard a signal; and there can be no doubt these facts made his case, or that it then became incumbent on defendant to exonerate itself by showing some cause for the accident other than an omission of the statutory duty. There

was no chance to do this under the admissions in the answer in the event of a finding that defendant omitted to signal, except by proving plaintiff, even without a signal, could have seen or heard the train by using ordinary care. It was recognized throughout the instructions that though the bell was not rung, if plaintiff's negligence contributed to the accident, he could not recover. Nowhere, however, in the instructions was the jury charged regarding the burden of proof, and it is of this fact complaint is made. Two instructions were requested by plaintiff which were intended to advise the jury regarding the burden, but they were refused. One of them ran as follows: that if the jury believed from the evidence the defendant, its agents and servants, failed to begin ringing the bell eighty rods from where the railway crossed the street, and failed to keep the bell ringing until the engine passed over the crossing, and further found plaintiff was injured in consequence, the verdict must be for the plaintiff, unless defendant had shown the failure to ring the bell, if the jury believed there was such a failure, did not cause the accident. Another instruction was, in substance, to the same effect as the foregoing, except that it concluded by telling the jury the burden was on defendant to show the failure to ring the bell was not the direct cause of the injury, if the jury believed plaintiff was injured; and unless the defendant had so shown, the verdict must be for the plaintiff. It seems to us those instructions might properly have been granted, though in the present case, where the only defense relied on in avoidance (that is if the jury found against defendant on the issue of whether the bell was rung) is contributory negligence, the instruction on defendant's burden of proof might be confined specifically to said matter, and the jury told the burden was on defendant to establish contributory negligence. It is argued the refused instructions were defective in failing to re-

quire the jury to find plaintiff was in the exercise of ordinary care when hurt. That he was not using ordinary care and in consequence was hurt, was the fact involved in what the instructions declared defendant had-to establish by the burden of proof; that is to say, the burden was on the defendant to prove the omission to sound the bell was not the cause of plaintiff's injury; and, as said, under the answer filed, this could be done only by proving his own negligence was the cause, or a contributing cause.

The judgment is reversed and the cause remanded. All concur.